IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELLOWES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CASE NO. 1:11-cv-04229 |
| ACCO BRANDS CORP., and | ) |
| ROYAL APPLIANCE MANUFACTURING | ) JUDGE GARY FEINERMAN |
| CO., d/b/a TTI FLOOR CARE NORTH | ) |
| AMERICA, and TECHTRONIC | ) |
| INDUSTRIES CO., LTD., | ) |
| | ) |
| Defendants. | ) |

**FELLOWES, INC.'S OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE, TO SEVER AND TRANSFER**

Plaintiff Fellowes, Inc. ("Fellowes") opposes to Defendants' Techtronic Industries Co., Ltd. ("TTI-China") and Royal Appliance Manufacturing Co., d/b/a TTI Floor Care North America's ("TTI-NA") (collectively "TTI") motion to dismiss or alternatively sever and transfer Fellowes' claims against TTI to the Northern District of Ohio (Dkt. Entry ("D.E.") 21).

Thirty three minutes past midnight in the Eastern Time zone, TTI filed a declaratory judgment suit in Ohio on a newly issued, Fellowes-owned U.S. Patent No. 7,963,468 (" '468 Patent"). Later that same day, Fellowes filed a patent infringement suit against TTI-NA, TTI-China, and Acco Brands Corporation ("ACCO") on the same patent. By seeking to sever and transfer the patent infringement claims against only TTI here, TTI's motion studiously avoids the proverbial elephant in the room, ACCO, and that doing so would create duplicative '468 Patent

litigations in Ohio and Illinois.[1] Also, considering that ACCO is headquartered in Illinois and is now a counterclaim-plaintiff in this Court's '468 Patent case, this case will proceed in Illinois, either with or without TTI-NA and TTI-China as parties. This forces TTI to offer the Court the choice of either (1) dismissing and creating dual, competing litigations, or (2) transferring and creating the same dual, competing litigations. Dismissing or transferring half a patent case actually creates two separate cases. The only explanation for TTI's request is an overzealous effort to get half of this patent infringement case to Ohio, thereby winning some forum selection battle.

As its main argument in support of dismissing or transferring, TTI clings tenaciously to its status as the "first-to-file." In so doing, TTI suggests that the law dictates a rote, mechanical methodology for determining forum selection in parallel cases. If that 12:33 a.m. Eastern filing were the end of the analysis, the East Coast court filings would always win. This is why, according to the Federal Circuit, in competing patent cases, the proper venue selection is based, not on a race to the courthouse, but on thoughtful consideration of the factors applicable to a venue analysis under 28 U.S.C. § 1404(a).

TTI's motion pays only passing lip service to these § 1404 factors, offering irrelevant and unsubstantiated claims of judicial "chaos" if Fellowes is permitted to eventually consolidate this present case with a related case which is now pending in Ohio (TTI 1).[2] TTI's misdirection

---

[1] TTI's motion seeks to have the claims against only "Royal"/TTI dismissed. TTI's brief in support of the motion however, states "the Court should dismiss the Complaint ...." (TTI's Brief, pg. 1). Fellowes will rely on the language in TTI's motion because the dismissal of the entire complaint, including third party ACCO, is clearly misguided. Should TTI seek dismissal of the entire Complaint, Fellowes will seek to file a sur-reply.

[2] In contrast, TTI claims judicial efficiency favoring transfer in view of potential consolidation with the '822 Case in Ohio (TTI 1). TTI and ACCO did not oppose Fellowes' motion to reassign this case to Judge Leinenweber who currently presides over the '823 case (Fellowes 1). But TTI did oppose the motion to consolidate Fellowes 1 and 2.

2

403016541v6

away from the relevant venue factors is understandable and intentional because the factors support denial of TTI's motion.

## I. BACKGROUND

### A. Four Cases With Six Patents

There are four patent cases pending and they involve three related patents which are all owned by Fellowes: **(1)** U.S. Patent No. 7,631,822 ("'822 Patent") (Civil Action No. 1:10-cv-02604, N.D. Ohio, filed Nov. 15, 2010) ("TTI 1"); **(2)** U.S. Patent No. 7,631,823 ("'823 Patent")(Civil Action No. 1:10-cv-7587; N.D. Illinois, filed November 26, 2010) ("Fellowes 1"); and **(3)** U.S. Patent No.7,963,468 ("'468 Patent") (Civil Action No. 1:11-cv-01276-DCN, N.D. Ohio, filed Jun. 21, 2011) ("TTI 2") and (Civil Action No. 1:11-cv-04229, N.D. Ill., filed Jun. 21, 2011) ("Fellowes 2"). The three related patents ('822, '823, and '468) relate to thickness sensing technology used to prevent or reduce jamming in paper shredders. All three related patents have the same written description, the same drawings, the same owner, the same inventors and the same title. In Fellowes 1, there are also three additional Fellowes' patents, involving additional shredder technologies, including a pivoting head and detecting when the waste bin is full. The following reference shows the cases and patents – the three related patents are in yellow.

|  | *Fellowes* | *TTI* | *ACCO* | *'822* | *'823* | *'954* | *'009* | *'293* | *'468* |
|---|---|---|---|---|---|---|---|---|---|
| **TTI 1** (ND OH) | X | X |  | X |  |  |  |  |  |
| **Fellowes 1** (ND ILL) | X |  | X |  | X | X | X | X |  |
| **TTI 2** (ND OH) | X | X |  |  |  |  |  |  | X |
| **Fellowes 2** (ND ILL) | X | X | X |  |  |  |  |  | X |

3

### B. The other Illinois Case (Fellowes 1) and the Ohio Cases (TTI 1 and 2)

There are two motions pending before Judge Leinenweber in the Fellowes 1 case: (1) an unopposed motion to reassign this case to Judge Leinenweber and (2) a motion to consolidate Fellowes 1 and 2. Judge Leinenweber was apprised of this expected situation at a status conference on July 7th and set a status conference for August 16th.

In Ohio, TTI moved to amend TTI 1 to include the allegations of TTI 2 and alternatively to consolidate TTI 1 and TTI 2. *See* D.E. 25 in 1:10-cv-02604 (June 27, 2011 N.D. Ohio) (**Ex. B**, Docket sheet). Fellowes opposed that motion while also moving to dismiss TTI 2 or alternatively, to transfer TTI 2 to Illinois. (*Id.* at D.E. 28). In a status conference in chambers addressing these two pending motions, Judge Donald C. Nugent indicated a desire to wait and see what the Illinois Court decides regarding consolidation and transfer. (*Id.* at D.E. 30).

### C. The Parties, Witnesses, and Documents

Fellowes' headquarters are in this District. *See* Complaint (D.E. 1 at ¶ 1). ACCO's headquarters are in this District. *See* ACCO's Answer and Counterclaim (D.E. 23 at ¶ 7). Both co-inventors reside in Illinois (one is a <u>nonparty</u> witness) as does the Underwriters Laboratory Inc. or UL, with its corporate headquarters in Northbrook, Ill.[3] *See* **Exhibit A**, Carson Decl., ¶¶ 12, 16. Shredders that are intended to be sold in the United States must pass UL certification and UL is a very useful source for determining infringing model numbers and timing. *Id.*

TTI-China is headquartered in Hong Kong, China. TTI-N.A., with headquarters in Ohio, is a wholly owned subsidiary and was purchased by TTI-China in 2006. TTI-N.A. identifies itself as a floor care/cleaning product company featuring brand names Hoover® and Dirt

---

[3] http://www.ul.com/usa/eng/pages/.

4

403016541v6

Devil®.[4] (**See Exhibits D1-3**). The parent company, TTI-China, boasts $3.3 billion in sales in 2010.[5]

|  | Fellowes | ACCO | TTI-China | TTI-NA |
|---|---|---|---|---|
| HQ | Illinois | Illinois | Hong Kong | Ohio |
| Witnesses | Illinois | Illinois | Hong Kong/China | Ohio |
| Documents | Illinois | Illinois | Hong Kong/China | Ohio |
| Inventors/UL | Illinois |  |  |  |

## II. THE LAW

### A. Caselaw Favors Convenience and Judicial Economy Over a Rigid First-to-File Rule

When two similar actions are filed at different times, there is a "general rule favoring the forum in which the first suit is filed."[6] This "general rule" is not absolute. "Rather than automatically deferring to the first-filed action, however, a district court should treat a motion to transfer a later-filed case as it would any other motion to transfer." *21 srl v. Newegg, Inc.*, 2010 U.S. Dist. LEXIS 28524, *5-6 (N.D. Ill. Mar. 24, 2010). "The first-filed suit rule, for instance, will not always yield the most convenient and suitable forum." *Id.* (citing *Micron Tech, Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). "Therefore, the trial court must consider the real underlying dispute: the convenience and suitability of competing forums. In sum, the trial court must weigh the factors used in a transfer analysis as for any other transfer motion, basically the same as a transfer action under 28 U.S.C. § 1404(a)." *Id.*, compare *Miller v. SKF USA, Inc.*, 2010 U.S. Dist. LEXIS 137768 (N.D. Ill. Dec. 29, 2010) (citing *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973 (7th Cir. Nov. 23, 2010)).

---

[4] http://www.ttifloorcare.com/.

[5] http://www.ttigroup.com/en/investor_relations/financial_summary/financial_highlights.

[6] *Mlr v. U. S. Robotics Corp.*, 2003 U.S. Dist. LEXIS 2827, 4-5 (N.D. Ill. Feb. 25, 2003) (quoting *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)).

5

§ 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Among the factors bearing on this inquiry are the plaintiff's choice of forum, the locations of the material events, the relative ease of access to sources of proof, the convenience of the parties, and the convenience of the witnesses. *Id.* (citing *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000)). Moreover, the primary concern is not the convenience to the parties, but the convenience to the witnesses - non-party witnesses, in particular. *21 srl*, 2010 U.S. Dist. LEXIS 28524, at *7-8. Importantly, TTI bears the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient. *Id.* (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir.1986)).

The interest of justice also provides compelling reasons for maintaining all of the suits in the same district. Otherwise, "[l]itigation involving the same patents and similar allegations of infringement and invalidity will proceed simultaneously in two separate courts, and two separate courts would have to construe the same claims. This duplicative litigation would be a waste of time, energy, and money -- the problems sought to be prevented by § 1404(a)." *21 srl*, 2010 U.S. Dist. LEXIS 28524, at *10-11 (citing *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, (1960)). Duplicative actions also could result in inconsistent judgments. *Id.* These factors weigh heavily against transfer. *Id.*

### III. ARGUMENT

#### A. Convenience and Judicial Economy Outweigh First to File and Favor a Single Case in Illinois Over Bifurcated Claims

Citing *Genetech*, TTI argues that the Federal Circuit mandates a rigid, unwavering application of the "first-to-file" rule in TTI's effort to dismiss or transfer the portion of the case

6

403016541v6

applicable to TTI. This is an inaccurate reading of *Genentech* and ensuing Federal Circuit caselaw, and in doing so, TTI invites the Court to commit legal error.

TTI gloats about its midnight escapade when the patent first issued, arguing to the Ohio Court, "Unfortunately for Fellowes, in order to preserve jurisdiction, earlier on that same day (at 12:33 A.M.) Royal [TTI] filed a declaratory judgment ...."[7] TTI then boasts to this Court, which is in the Central Time Zone, that "it was not possible for Fellowes to have filed its complaint earlier ..." due to the time zone differences between the two Courts. (TTI's Brief, pgs. 3-4).

Courts have consistently frowned upon such forum shopping antics by developing case law that refuses to reward such gamesmanship. In fact, as seen in a case like *Serco Services Co.*, anticipatory filings, done in bad faith, usually cut against the first-to-file party. *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995) (District court found that Serco intended to preempt Kelley's infringement suit as one factor in the decision to dismiss the declaratory suit in favor of Kelley's subsequent infringement action.).

Furthermore, this case is highly atypical of most first-to-file issues in that the substantive infringement action was filed the same day as the declaratory relief action. Ironically, Fellowes previously faced a similar "race-to-the-courthouse" venue dispute over a patent the day it issued. *Aurora Corp. of Am. v. Fellowes*, 2008 U.S. Dist. LEXIS 24518, *1-2 (C.D. Cal. Feb. 27, 2008) (**Exhibit C**). A Fellowes shredder patent issued on Christmas Day. Each side filed competing suits the same day – the day after Christmas, 2007. Fellowes opponent Aurora filed first and argued that the declaratory judgment action must be granted preference under the first-filed rule.

The District Court did not agree, explaining that the Supreme Court dealt with this very issue in *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952). The District

---

[7] TTI's motion to amend or consolidate in TTI 1 (1:10-cv-02604, D.E. 25, pg. 3).

7

Court explained that in competing parallel patent cases, the Supreme Court dispensed with the rigid first-to-file rule in favor of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Id.* (quoting *Kerotest*, 342 U.S. at 182).

If the claims against TTI are dismissed or transferred to Ohio, as TTI requests, the claims against and by ACCO would still remain in Illinois. As explained in *21 srl*, which is actually cited by TTI, "[t]his duplicative litigation would be a waste of time, energy, and money -- the problems sought to be prevented by § 1404(a)." *21 srl*, 2010 U.S. Dist. LEXIS 28524, at *10-11. Duplicative actions here would result in two courts handling two cases, could result in inconsistent judgments, and "weighs heavily against transfer." *Id.* For example, having two separate actions regarding the same patent gives defendants a "second bite at the apple" when it comes to attacking the validity of the asserted patent. Should ACCO fail to prove invalidity of the '468 Patent as alleged, Fellowes would still have to defend itself, all over again, in Ohio against the same patent invalidity claims – only this time asserted by TTI. Based on that example and judicial efficiency, the Ohio and Illinois '468 Patent cases should not proceed simultaneously and TTI's motion to dismiss or transfer should be denied.

### B. TTI Has Failed to Show That The Northern District of Ohio Is Clearly More Convenient Under § 1404

TTI makes little effort to prove that Ohio is "clearly a more convenient forum" than Illinois. To do so, they must prove "on balance, the convenience of the parties and the interests of justice are better served by transferring the case." *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). TTI downplays the importance of convenience and interests of justice factors and instead asserts that a transfer is warranted based on arguments against an anticipated request by Fellowes to transfer the TTI 1 case from Ohio to Illinois. TTI

8

claims judicial "chaos" will occur if Fellowes is permitted to eventually consolidate the TTI 1 case with this case. This misguided argument ignores what is important in deciding venue disputes and should be viewed as irrelevant to the motion. The interests of justice will not be served by dismissing or transferring because there will be duplicate litigations.

TTI offers that "[a] vastly more logical and efficient result is: The litigation of Fellowes and ACCO takes place in a single lawsuit in the Northern District of Illinois, and the litigation between Fellowes and Royal takes place in a single lawsuit in the Northern District of Ohio." (TTI's brief, pg. 7). A single suit (in Ohio) plus a single suit (in Illinois) equals duplicate, expensive, and time consuming litigations and this inefficiency is not "in the interest of justice" which is required by Seventh Circuit Case Law.

Instead of TTI offering facts in its opening brief to support that Ohio is clearly more convenient to the two Illinois and one Hong Kong parties and their witness, TTI offers only that the remaining convenience factors "do not suggest" that Illinois is better than Ohio. TTI's overly simplistic logic is that all else being equal, TTI filed first in Ohio, so dismiss or transfer to Ohio. As directed by the case law, we apply the convenience factors and explain why Fellowes wins on each one: (1) convenience of parties and witnesses, (2) where agreements were negotiated and executed, (3) contacts, (4) choice of forum, and (5) costs. This explanation reveals why TTI studiously avoided them.

    **1.**    **Convenience Of Parties/Witnesses; Non-Party Witnesses In Particular**

        **a.**    **Party and Witnesses – ACCO Brands Corporation is located in Illinois.**

The fact that this case includes ACCO, whose headquarters is in Lincolnshire, Illinois, which is in this District, seals the deal in favor of keeping this case in Illinois. ACCO's presence in this district is one reason why Fellowes 1 is in this district and why ACCO counterclaims and

9

alleges proper jurisdiction of this court over ACCO. It is also probably why ACCO admitted personal jurisdiction here in both cases. (D.E. 23, ¶ 20). It is expected that as an Illinois based company, most of ACCO's witnesses and documents will be located in the Northern District of Illinois and a review of their website confirms this.

### b. Party and Witnesses at Fellowes and Non-Party Inventor Gach.

Fellowes was founded in Chicago in 1917. (*See* **Exhibit A**, Carson Affidavit, ¶ 1). It moved its headquarters to Itasca, Illinois in 1978, where it remains in the Northern District of Illinois. *Id.* Fellowes currently has approximately 600 employees in its Itasca headquarters including its business machine New Product Development ("NPD") team. (*Id.*, ¶ 2). The inventors of the '468 Patent are Taihoon Matlin and Eric Gach. *Id.* Mr. Matlin is employed by Fellowes and is on the NPD team in Itasca. *Id.* at ¶ 2. Mr. Gach is not a Fellowes employee, but is located in the Northern District of Illinois. *Id.* at ¶ 3. So, Mr. Matlin and Mr. Gach are the inventors of the three directly related Fellowes' patents, the '822, '823, and '468 patents with their same spec figures. The sales and finances for Fellowes are handled by employees in Itasca. *Id.* at ¶ 5. These employees would be necessary to testify about profit margins, lost profits, and their relationship to the other fifteen factors used in determining royalty damages. *Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). The documents which the witnesses are using reside in Itasca as well. *Id.* at ¶ 5.

### c. Non-Party Witnesses – Underwriters Laboratory is located in Illinois.

One of the biggest challenges is obtaining technical specifications of the many and various shredders that have been offered by TTI to United States consumers and to thereby ensure that the infringing and non-infringing devices are more easily identified. One place that certainly has much of this information is the Underwriters Laboratory ("UL"), which one may

10

403016541v6

recognize from a tag on electrical appliances sold in the U.S. (**Ex. A**, ¶ 13). UL is headquartered in Northbrook, Illinois, and is located in the Northern District of Illinois. *Id.* UL holds the certificates that allow TTI to sell its shredders in the United States. *Id.* In order to obtain UL approval for its shredders, a company must file technical specifications and satisfy certain requirements for the shredder to be approved. *Id.* at ¶ 16. For example, the publicly available document attached as **Exhibit E** shows the various TTI model numbers that have been previously approved by UL according to UL's website. *Id.* at ¶ 17.

    **d. Party and Witnesses – TTI Parent Company Is An 18,000 Employee Company Headquartered in Hong Kong; TTI-NA Is In Ohio.**

In prior declaratory judgment pleadings, TTI averred that Royal ("TTI-NA") is an Ohio corporation and TTI ("TTI-China") is a Hong Kong corporation with its principal place of business in Hong Kong. (**Ex. B** at D.E. 1). According to a recent report, TTI-China is a Chinese company with over 18,000 employees and worldwide sales in 2010 of over $3 billion. *Id.* (**Exhibit D1** at 1). Its "Royal" subsidiary in Ohio sells floor-care appliances such as Hoover, Regina®, Royal, Dirt Devil®, and Vax. (*See* generally **Exhibits D1-3**).

    **e. Witnesses – The Availability Of Compulsory Process To Compel Attendance Of Unwilling Non-Party Witnesses; And The Ease Of Access To Sources Of Proof.**

These issues are both discussed above. If this case is bifurcated, non-parties like the Mr. Gach, the inventor, or UL or ACCO (if the case is transferred) would be hard pressed to voluntarily attend a trial in Ohio, especially, in ACCO's case, where it would be attending to its own case in Illinois. Furthermore, any UL or other non-party Illinois testimony will most likely have to be provided to an Ohio jury by videotaped deposition.

11

403016541v6

### 2. Location Where The Relevant Agreements Were Negotiated And Executed

The only applicable legal documents involved thus far are the asserted patents. Because a patent is a legal document whose scope is negotiated with the U.S. Patent and Trademark Office, they are at least analogous to "agreements" for the purpose of this factor. They were obtained by inventors in Illinois, including a non-employee who is located there. The inventors' documents, including invention research, prototypes, and technical drawings are also located in Illinois as are the related financial documents. Thus, the "relevant agreements" are based in Illinois.

### 3. Contacts

#### a. Respective Parties' Contacts With Illinois.

Fellowes and ACCO are headquartered here. Collectively, TTI has relatively few of its 18,000 employees in Ohio and it is believed that TTI's true manufacturing and shipping is handled by TTI-China, not TTI-NA. It is also believed that TTI's technical, manufacturing, and financial documents showing costs for the accused devices are probably located overseas. In addition to selling shredders through Staples, Inc. nationwide, TTI has had multiple contacts with the Northern District of Illinois in its efforts to offer and sell shredders, such as with UL. (**Ex. A,** ¶ 13).[8] TTI-China has submitted the designs for its U.S. paper shredders to UL.

#### b. Contacts Relating To Plaintiffs' Cause Of Action In Illinois.

Fellowes' cause of action is for infringement of the '468 Patent. There are also counterclaims filed by ACCO for invalidity and non-infringement of the '468 Patent. In both

---

[8] While it has numerous locations worldwide, including in China, UL is headquartered in Northbrook, Illinois. *See* http://www.ul.com/about/locations/nbk/.

12

cases, Fellowes' patent, the inventors, most relevant witnesses, and related technical and financial documents, are all located in Illinois.

### 4. The Plaintiffs' Choice Of Forum

Fellowes chose Illinois and TTI chose Ohio. As the caselaw above describes, the choice of forum in this case actually weighs against TTI's choice and in favor of the entire case remaining in Illinois because TTI's anticipatory filing by TTI in Ohio was clearly motivated by forum preference.

TTI should not be rewarded for filing a declaratory judgment against a newly issued patent just after midnight because first to file is not an inflexible rule. As pointed out in *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010), "This court has 'never laid down an inflexible rule that the prior filing controls.'" The Federal Circuit likewise does not demand an adherence to such an inflexible rule – despite TTI's contentions. *Micron Tech., Inc.*, 518 F.3d at 905 ("These 'convenience factors' take on added significance in light of the newly understood legal environment surrounding declaratory judgment jurisdiction in patent cases."). Indeed, the Federal Circuit's current view is consistent with the *Research Automation, Inc.* reasoning "where, as here, [when] the case involves two identical suits in distinct venues, this [first-to-file] factor loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed. The district court was right to discount this element in this context." *Research Automation, Inc.*, 626 F.3d at 979.

### 5. Costs – The Differences In The Costs Of Litigation In The Two Forums

For Fellowes, the cost of litigating in Ohio versus Illinois will be substantial. In addition to providing accommodations and travel for numerous Illinois/Fellowes witnesses (such as a company officer, department head, inventors, and financial people), there will be additional

13

403016541v6

accommodations for third parties whom Fellowes would have to convince to testify live. Those will also likely include witnesses such as the non-employee inventor. For TTI, with its very few potential employee witnesses (many of whom will be coming from Asia anyway), the difference between a trial in Ohio and Illinois will be much smaller. Direct flights from Hong Kong to Chicago are prevalent. To the extent that they rely on witnesses from another TTI entity, the travel distance to Illinois versus Ohio is *de minimus*. It comes down to a question of having the case where the TTI sales department is located or where entire companies are headquartered. The cost difference between Ohio and Illinois will be substantial for Fellowes.

### C.    Severance Without Transfer Makes No Sense

TTI seeks to sever <u>and</u> transfer. But the presence of ACCO and the remaining convenience factors noted above weigh heavily against a transfer. So, the only question that remains is whether TTI actually seeks severance of the claims in the absence of a transfer to Ohio.

In order to avoid duplication of effort and to further promote judicial efficiency, Fellowes opposes TTI's motion to sever because it makes sense for the claims of both companies to be tried together. In *Magnavox Co. v. APF Electronics, Inc.*, for example, this Court concluded that a defendant was misjoined, but nonetheless refused to sever the defendant because it "would deter the efficient and orderly pursuit of this litigation." 496 F. Supp. 29, 34 (N.D. Ill. 1980). Given the overlapping common questions of law and fact, the claims against TTI should not be severed.

### IV.    CONCLUSION

TTI's request would create two separate cases; two separate sets of scheduling orders, discovery, and summary judgment motions; two judges independently resolving claim construction disputes, pre-trial orders, and jury instructions; two separate trials with separate

14

403016541v6

juries deciding patent infringement and validity – all for the same '468 Patent. This duplicative inefficiency alone outweighs all other § 1404 factors combined. For the reasons stated above, Fellowes respectfully requests that this Court deny TTI's Motion to Dismiss or Transfer.

Dated: August 11, 2011                              FELLOWES, INC.

/s/ William P. Atkins
William P. Atkins (*admitted pro hac vice*)
william.atkins@pillsburylaw.com
Robert M. Fuhrer (*admitted pro hac vice*)
robert.fuhrer@pillsburylaw.com
PILLSBURY WINTHROP SHAW
  PITTMAN LLP
1650 Tysons Blvd.
McLean, VA 22102
Tel: 703.770.7900
Fax: 703.770.7901

Peter John Shakula, II (#6204370)
pjshakula@woodphillips.com
WOOD PHILLIPS
500 West Madison Street, Ste. 3800
Chicago, IL 60661-2562
Tel: 312.876.1800
Fax: 312.876.2020

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of August, 2011, I caused a copy of FELLOWES, INC.'S OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE, TO SEVER AND TRANSFER to be filed by electronic filing. Notice of filing will be sent to all counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William P. Atkins
William P. Atkins